Lewis D. HAMM

v.

CONSOLIDATED RAIL CORPORATION.

Civ. A. No. 80–182.

United States District Court, E.D. Pennsylvania.

June 20, 1983.

Joseph Smukler, Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., for plaintiff.

D. Scott Morgan, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Plaintiff, Lewis D. Hamm, filed this action under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, to recover money damages for injuries he incurred on December 14, 1979 while working as an employee for the defendant, Consolidated Rail Corporation (Conrail). The case was tried before a jury which returned a general verdict in favor of the plaintiff in the amount of $5,000.00. Judgment on the verdict was entered on February 10, 1983, and, thereafter, plaintiff filed a timely motion for a new trial. *See* Fed.R.Civ.P. 59.

Plaintiff raises three issues in his motion for a new trial: (1) whether the court erred in submitting the issue of contributory negligence to the jury; (2) whether the verdict is so shocking and so grossly inadequate as to constitute a miscarriage of justice; and (3) whether the court erred in permitting deposition testimony of defendant's expert psychiatrist relating to restrictions on plaintiff's activities prior to his injury. After consideration of each of these contentions, and for the reasons set forth herein, the plaintiff's motion for a new trial will be denied.

The facts upon which plaintiff based his claim are relatively simple. On December 14, 1979, plaintiff was working as a trackman for the defendant Conrail. A trackman is responsible for track maintenance, including the replacement of railroad ties and rails. On the date of the accident, plaintiff and four other railroad employees were repairing a crossing eight miles outside of Williamsport, Pennsylvania. The job first required the removal of the lag bolts, tie timbers and ballast or stone at the crossing. The job then required a trackman to inspect the tie plates which hold the rails secure to insure that the spikes were flush with the tie plates. When this task was completed, new tie timbers were placed into position.

In order to move the new tie timbers into position, plaintiff was sent to the work bus to get "tie tongs" which are used to carry the timbers. Because there was only one set of tie tongs, and two sets of tie tongs are required to properly lift the tie timbers, plaintiff was directed by his foreman to jockey the tie timbers into position with a

"lining bar." Under Conrail safety standards, Rule 3357, tie tongs are the preferable method of lifting and carrying the timbers, but use of a "lining bar" is an acceptable practice.

As plaintiff was moving the tie timber with the lining bar, the tie timber suddenly stopped. The tie timber struck a spike protruding 1½ to 2 inches from a tie plate. The spike should have been flush with the tie plate. As a result of the sudden stop, plaintiff reinjured the muscle in his left arm. Plaintiff had previously ruptured the biceps muscle in his left arm in an accident in October of 1978 but no corrective surgery had been performed. Plaintiff informed his foreman that he had reinjured his left arm and was taken to Williamsport Hospital for examination. The work gang on which plaintiff was working on December 14, 1979, the day of his injury, was abolished by furlough because of the seasonal nature of the work. Plaintiff did not return to work until March 5, 1980. However, no one with less seniority than the plaintiff had returned to work from the furlough prior to that time.

(1) Contributory Negligence

Plaintiff's first assignment of error relates to the charge to the jury. Plaintiff contends that it was error to refuse to charge the jury that there was no evidence presented of record of contributory negligence. The proposed instruction, which I rejected, stated:

> 20. I charge you that from all the evidence in this case it does not appear that the plaintiff himself was contributorily negligent, and therefore, if you find defendant's negligence contributed, in the slightest degree, to the injuries to the plaintiff, you should award the plaintiff total damage as I shall define it.

It is plaintiff's position that the defendant offered no evidence to prove that the plaintiff performed the job in an improper manner or was at fault in any other way than in performing the work in accordance with his instructions.

I charged the jury, in accordance with the Federal Employers Liability Act, 45 U.S.C. § 53, that

> the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided,* That no such employee who may be injured ... shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury ... of such employee.

The parties in this action are essentially in agreement as to the applicable propositions of law: (1) the burden of proving contributory negligence is upon the defendant; and (2) where there is no evidence in the record of contributory negligence, it is improper to instruct the jury that their award, if any, may be reduced proportionately if they should find that plaintiff's injury resulted from his own contributory negligence as well as that of the defendant railroad. *Morran v. Pennsylvania Railroad Co.,* 321 F.2d 402 (3d Cir.1963). The sole dispute between the parties is whether there is any evidence in the record to support the submission of the question of contributory negligence to the jury.

Upon review of the notes of testimony, I conclude, as I did at trial, that there was sufficient evidence to permit and require submission of the question of contributory negligence to the jury. The plaintiff testified on direct examination that he was standing on the inside gauge of the track attempting to move a tie timber into position against a stationary rail by using a lining bar. Plaintiff was working at one end of the tie timber and his co-worker, Gary Swails, was working at the other end. The forward motion of the tie timber was suddenly stopped by a spike protruding 1½ to 2 inches from a tie plate. Plaintiff testified that he did not have the job that day of "spiking" or hammering down the spikes so that they would be flush with the tie plates. He further testified that he did not

see the spike sticking up, although he was standing on the other side of the tie bar. Finally, he testified that the foreman should have checked to see that all of the spikes were flush before the trackmen attempted to move the tie timbers into position.

On cross-examination, plaintiff conceded that it is the responsibility of any person handling materials to be sure that there are no obstructions. Moreover, plaintiff acknowledged that Rule 3358(b) of the Conrail safety standards cautions trackmen to keep clear of obstructions in order to prevent slipping, falling or being caught by material. Additionally, plaintiff was an experienced trackman having worked for Conrail since April, 1974.

Submission of the question of contributory negligence to the jury on the facts of this case was proper because, although the plaintiff testified that he did not see the protruding spike, the jury could infer from all the surrounding circumstances that he should have seen the spike or should have checked for obstructions before attempting to move the tie timber. His experience as a trackman and his knowledge that the spikes must be flush before the tie timber could be properly positioned and knowledge that a raised spike could cause harm are certainly factors for the jury's consideration. This is not an instance where the injured party had no reason to apprehend the danger—the testimony disclosed that the plaintiff was aware that the spikes must be flush with the tie plates before lining the tie timber into position. Moreover, the plaintiff testified that the protruding spike was visible upon his later examination to determine what stopped the motion of the tie timber. The jury could reasonably infer from the plaintiff's own testimony, that had the plaintiff been reasonably observant, the injury would not have occurred.

■ Ordinarily the issue of contributory negligence is a matter for determination by the jury. If there is competent evidence, direct or circumstantial, that a plaintiff was contributorily negligent, the issue should be submitted to the jury.

(2) Inadequacy of the Verdict

■ Next, the plaintiff contends that the jury award of $5,000.00 was so grossly inadequate as to constitute a miscarriage of justice. The plaintiff focuses primarily on his own testimony at trial and the testimony of his expert witnesses as to the degree and permanency of his injury. Plaintiff argues that the $5,000 jury award "barely covers plaintiff's lost wages to the date of trial, let alone pain and suffering, medicals, and future damages."

Plaintiff's argument overlooks two key factors. First, there was ample credible evidence that plaintiff's wage loss was de minimus. The type of work engaged in by the plaintiff was seasonal. Dwayne Forsburg, a supervisor at Conrail's Williamsport, Pennsylvania, office testified that the "maintenance of way" work gang on which the plaintiff worked was furloughed or abolished at the end of the day on December 14, 1979, the same day that plaintiff was injured. Although plaintiff took the position at trial that men with less seniority returned to work prior to him, there was no definitive evidence of this in fact occurring. Plaintiff's assertions in this regard were directly contradicted by Mr. Forsburg's testimony and plaintiff produced no other witnesses to corroborate his contention. There was some evidence that one Conrail employee may have worked one day after the furlough of plaintiff's work gang but even this evidence was equivocal. Mr. Forsburg testified that when plaintiff's work gang was recalled in April, no Conrail employees with less seniority were recalled before the plaintiff. Thus, the evidence disclosed, at best, that plaintiff lost only one day's wages if Mr. Forsburg's testimony was accepted by the jury.

Second, the injury to the plaintiff on December 14, 1979, was plaintiff's second injury to the muscle of his left arm. One of the questions posited by the defendant's counsel in his opening speech to the jury was to what extent the plaintiff's injuries

were caused by the December 14, 1979 accident. Plaintiff acknowledged on cross-examination that after his prior accident, he had been treated by a number of doctors including one who recommended surgery. Plaintiff was informed at that time that absent surgery, he would suffer a twenty-five percent loss of strength. The plaintiff further conceded that after his first injury, he was restricted as far as strenuous work with his left hand and that he had to give up bowling and weight lifting. He also testified that he had problems lifting things after his first injury which he did not experience prior to that injury. Finally, the plaintiff testified that his second injury did not interfere with his hobbies of hunting and fishing. All of these factors were properly presented to the jury, along with the doctors' testimony as to the severity of plaintiff's injury. The resulting verdict was not so grossly inadequate as to warrant the grant of a new trial.

The issues as to the seriousness of plaintiff's injuries and the extent of his disability caused by the incident were sharply, but fairly contested by the litigants. In the final analysis, the resolution was largely a matter of credibility. In light of the conflicting testimony, assuming that the defendant's version of the nature and extent of plaintiff's injuries was substantially accepted by the jury, the verdict in the sum of $5,000 comes well within the rule that the award be full and fair compensation for all injuries received and damages suffered from the accident.

■ Merely because the verdict may have been less than anticipated or hoped for by plaintiff is no more reason to set aside the verdict and grant a new trial than a verdict that may be substantially higher than expected by a defendant. Under our system of jury trials, litigants inevitably run the risk that the jury's determination of the amount of damages may vary substantially from reasonable expectations of litigants.

(3) Improper Admission of Testimony

■ Finally, plaintiff contends that the court erred in permitting deposition testimony of defendant's doctor, Charles Sutliff, a board certified psychiatrist. Dr. Sutliff examined the plaintiff on February 21, 1980, after the plaintiff's second injury, and advised the plaintiff that his arm would likely get better but that the plaintiff should avoid heavy lifting, particularly in a jerking fashion. Dr. Sutliff advised plaintiff that he could return to work on March 1, 1980.

Prior to his examination of the plaintiff, Dr. Sutliff took a brief history of plaintiff in which the plaintiff informed Dr. Sutliff that he ruptured his biceps muscle in October of 1978. Over objection of counsel for plaintiff, Dr. Sutliff was asked whether he would have given the plaintiff the cautionary instruction regarding lifting in a smooth fashion as a result of plaintiff's first injury in October of 1978. Assuming that the plaintiff had a ruptured tendon in 1978, Dr. Sutliff stated that he would have given the plaintiff the same advice regarding lifting in a smooth manner, without jerking. This testimony was permitted into evidence over plaintiff's objection.

Plaintiff argues that the admission of this evidence was improper because Dr. Sutliff had not examined the plaintiff subsequent to his first injury and before his second injury; because Dr. Sutliff was not shown medical records pertaining to plaintiff's first injury; and because Dr. Sutliff was not given a hypothetical fact situation upon which to base his opinion.

Dr. Sutliff was qualified at his deposition as a board certified psychiatrist, that is, a physician who deals in acute musculoskeletal problems and the chronic treatment and rehabilitation of victims of strokes, amputations, spinal cord injuries and so forth. Although he examined plaintiff after the December 14, 1979 accident, he was informed that the patient's history included a ruptured biceps muscle which was not treated surgically. The question asked of Dr. Sutliff was merely whether he would have advised plaintiff to lift in a smooth fashion after plaintiff's first injury, assuming, based on the patient's history, that the

injury was a ruptured tendon. Dr. Sutliff testified that his advice would be the same. I think that it was proper to ask the doctor, based upon his knowledge and experience, whether he would have advised a person, such as the plaintiff, with a ruptured tendon, to avoid lifting in a jerking fashion. The doctor had sufficient facts to enable him to reach a rational conclusion. To the extent that Dr. Sutliff's opinion was based on certain imponderables, the jury, of course, could properly accord Dr. Sutliff's opinion less weight. The admission of Dr. Sutliff's deposition testimony does not warrant the grant of a new trial. To preclude such expert opinion testimony would have unfairly restricted Conrail's right of defense.

### ORDER

Upon consideration of the plaintiff's motion for a new trial and the memoranda in support thereof, and upon consideration of defendant's response in opposition thereto, it is ordered that the plaintiff's motion for a new trial is denied.